## In re GENERAL CARPET CORPORATION.

### No. 20544.

District Court, E. D. Pennsylvania.

April 4, 1941.

James E. Gallagher, Jr., and Stradley, Ronon & Stevens, all of Philadelphia, Pa., for petitioner.

Rodney T. Bonsall and Evans, Bayard & Frick, all of Philadelphia, Pa., for trustee.

Henry W. Braude, of Philadelphia, Pa., referee in bankruptcy.

KALODNER, District Judge.

During the gaudy 20's and the dazed 30's many of those who had dealings with bankrupt estates regarded them as "happy hunting grounds".

The situation became so shocking that an aroused Congress enacted the Chandler Act in 1938. In plain and unmistakable terms the Chandler Act in Sections 241, 242 and 243, 11 U.S.C.A. §§ 641, 642, 643, erected safeguards against exploitation of bankrupt estates by the prospectors for gold, who appeared to regard them as privately staked out "claims".

Despite the plain terms of the Chandler Act governing allowances to those connected with the administration of bankrupt estates, there still seem to be some who seek to nullify the public policy enunciated by the Congress and who continue to regard bankrupt estates as "grab bags".

The instant case prompts these observations.

Under the provisions of the Chandler Act, June 22, 1938, section 7, subs. a, b, 11 U.S.C.A. § 25, subs. a, b, duties are imposed upon bankrupts to cooperate with the court and the bankruptcy trustee in all matters pertaining to the bankrupt estate.

Section 7, sub. a(3), provides that the bankrupt shall "examine and report to his trustee concerning the correctness of all proofs of claim filed against his estate", and (7) "in case of any person having to his knowledge proved a false claim against his estate, disclose that fact immediately to his trustee" and (8) to file schedules listing his creditors "showing * * * the amount due to or claimed by each of them, the consideration thereof * * *"; (10) that the bankrupt shall "submit to an examination concerning * * * his dealings with his creditors and other persons * * * and in addition, all matters which may affect the administration and settlement of his estate * * *."

Section 7, sub. a(10) further provides "that when the bankrupt is required to attend for examination, except at the first meeting and at the hearing upon objections, if any, to his discharge, he shall be paid actual and necessary traveling expenses for any distance in excess of 100 miles from his place of residence at the date of bankruptcy * * *."

Section 7, sub. b, provides that "where the bankrupt is a corporation, its officers, the members of its board of directors or trustees or of other similar controlling bodies * * * shall perform the duties imposed upon the bankrupt * * *."

In the instant case, Isaac L. Rice was secretary and a director of the General Carpet Corporation when it filed a petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on August 24, 1938. Efforts at reorganization having failed, the General Carpet Corporation was adjudicated a bankrupt on February 20, 1939. The Chandler Act is applicable herein by virtue of section 276, sub. c(1), 11 U.S.C.A. § 676, sub. c(1).

Rice has filed a petition for a certificate of review of an order by the referee disallowing his claims totaling $2,545 for services alleged to have been rendered to the trustee in bankruptcy.

The alleged services were rendered in connection with claims against the bankrupt estate.

The petition for the certificate of review is utterly without merit. Rice's presumption in demanding $2,545 for his services

is equalled only by the shocking size of the fee which he seeks.

As to the latter, the record discloses that in connection with one disputed claim Rice seeks $2,000 for his services. As to that transaction, Rice is asking $1,500 for appearing on three days at the referee's office—at the rate of $500 a day. Very modestly, too, he asks $100 for a "conference" with counsel for the trustee in bankruptcy; $300 for "thirty hours of study"; $50 for "correspondence" with counsel for the trustee in bankruptcy (the correspondence, incidentally, consisting of eight letters written to counsel for the trustee in bankruptcy); and $50 for "telephoning and traveling".

As to the second claim on which Rice seeks $545 for his services, it is made up as follows: $200 for a "deposition"; $50 for a "conference" with counsel for the trustee in bankruptcy; $250 for "twenty-five hours of study"; $15 for the writing of three letters to counsel for the trustee in bankruptcy; and $30 for "telephoning and traveling."

The $10 for each hour of "study" is predicated on Rice's contention that it was necessary for him to review records of the bankrupt in connection with the two claims against the bankrupt estate above mentioned.

In his opinion and order disallowing Rice's claims, the referee very properly pointed out that "it is not contended that authority was ever asked of the Court by the trustee for leave to engage the claimant as an expert witness or to pay him any fixed compensation * * *." In this connection, the referee's opinion also noted that there was no contention that "the trustee ever held out to him (Rice) any definite or express hope or assurance of compensation other than that which might be, on his application, awarded to him by the court" and further that counsel for the trustee "when the claimant spoke of the compensation he expected to receive, expressed doubt as to whether such compensation could be awarded to him, pointing out that the matter would have to be submitted to the Court * * *."

It must be stressed that both in his petition for allowances filed with the referee, and in his testimony in support of his petition before the referee, Rice did not claim (nor does he now claim) that he had been *employed* by the trustee in bankruptcy or by anyone else connected with the administration of the bankrupt estate. His petition for a certificate of review merely asserts that the services were rendered "at the request of counsel for the trustee." His testimony before the referee is to the same effect. The record discloses that at the hearing before the referee, Alexander Rubin, Esq., of counsel for the trustee, specifically testified that he had advised Rice that there was doubt as to whether any compensation could be awarded him for his services. In a letter to Rice dated March 11, 1940, offered in evidence (p. 16, N.T.), Rubin stated: "While we as counsel know that we could not have carried on our defense to the Marks Laser claim without your assistance, nevertheless the difficulty of your position is that you were connected with the debtor company and, as such, are compelled to give evidence within your knowledge on any matter that becomes the subject of controversy."

Admitting that he cannot cite any precedent for his petition, Rice contends that an allowance can be made to him for his services under the provisions of section 62, sub. a of the Chandler Act. 11 U.S.C.A. § 102, sub. a.

The section cited provides, in part, that: "The actual and necessary costs and expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

Further, Rice cites General Order No. 10, 11 U.S.C.A. following section 53, promulgated under the Bankruptcy Act, which authorizes an indemnity for any expenses "in procuring the attendance of witnesses" and provides that such expenses shall be charged as part of the costs of administration.

The contention that section 62, sub. a, and General Order No. 10 are applicable to this situation is so specious that it may be dismissed without further comment.

The method pursued by Rice in seeking the allowances is not only unauthorized by the Chandler Act, but it is also in flagrant circumvention of the terms of that Act. As has already been pointed out, the bankrupt is required under section 7, sub. a, of the Bankruptcy Act to "submit to an examination concerning the conducting of

his business * * * and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge * * *."

Rice only did that which the law plainly required him to do, and more than that, compelled him to do. Under the guise of "special services" he seeks to establish a basis for his allowances.

In Re Hines et al., 2 Cir., 69 F.2d 52, it was ruled that the bankrupt may be required to assist the trustee in administering the bankrupt's affairs so as to gather into the estate all possible assets. The corollary of this proposition, of course, is that the bankrupt may be required to protect the estate against any diminution of its assets by reason of improper or excessive claims.

Further, as previously stated, there was no authorization by this Court to employ Rice for his alleged "special services". In this connection, it was pointed out by this Court, in Re General Carpet Corporation (Claim of Edwin M. Otterbourg), 34 F. Supp. 379, that a bankrupt corporation has no right even to employ *expert counsel* without specific approval of the Court following the filing of a reorganization petition or an adjudication of bankruptcy.

■ Also, as was pointed out by the Circuit Court of Appeals in the appeal from the decision cited, 3 Cir., 116 F.2d 426, 427: "The reorganization trustee is vested with title to the debtor's property; §§ 186, 70, 11 U.S.C.A. §§ 586, 110. The debtor therefore no longer has power to bind the assets of the estate. * * *"

Additionally, it must be pointed out that the Chandler Act specifically provides that the trustee of a bankrupt estate cannot employ counsel or accountants or appraisers without express leave of court.

■ To permit "employment" by the trustee, or counsel for the trustee in bankruptcy, of the bankrupt himself as an "expert witness" so as to enable the bankrupt to make a claim for services which he is required to perform by the plain terms of section 7, would be a palpable and wholly outrageous evasion of the Bankruptcy Act.

Crutcher v. Logan, 5 Cir., 102 F.2d 612, 613, is dispositive of the instant issue. In that case, the directors of the bankrupt corporation filed claims for allowances on the ground that they had furnished considerable information to the Trustee-Receiver in bankruptcy in connection with debt claims filed in the bankruptcy proceeding. The directors in that case also relied on their efforts in looking up records, dates, information and witnesses. The District Court found as a fact that in the determination of the claims against the bankrupt estate that the Trustee-Receiver "found it necessary to obtain a great amount of information from the appellants and to use them on many occasions as witnesses." In discussing the record the appellate court stated: "It is without dispute that in this regard the claimants rendered valuable services to the Trustee-Receiver." However, the Circuit Court of Appeals sustained the judgment of the District Court refusing any allowances to the directors, pointing out that the Bankruptcy Act required the directors of the bankrupt corporation to perform the very kind of services which they had rendered, but that there was no provision in the Bankruptcy Act for compensation for such services. The following quotation from the opinion (page 613 of 102 F.2d) is particularly pertinent: "The successful administration of a bankruptcy estate, of necessity, requires cooperation and assistance from the bankrupt, and where, as here, the bankrupt is a corporation the assistance must come from the officers and persons employed by the corporation prior to its bankruptcy. The officers should disclose all information which they have concerning the bankrupt's affairs. The inconvenience to the appellants, in furnishing this information, has been great in these proceedings. They have rendered valuable assistance, but there is no provision in the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., for compensation for such services. In re Eureka Upholstering Co., Inc., 2 Cir., 48 F.2d 95."

For the reasons stated, the petition for a certificate of review is denied, and the opinion and order of the referee is confirmed and affirmed.[1]

---

[1] It must be noted that the referee in his opinion and order ruled that the claimant's "actual and necessary traveling expenses" would be paid, in addition to the customary statutory witness fees and other actual costs, since the claimant resides at a distance in excess of 100 miles.