## GOLDIE v. COX.

### No. 12003.

Circuit Court of Appeals, Eighth Circuit.

Sept. 8, 1942.

See, also, 8 Cir., 130 F.2d 721.

Seth Lundquist, of Minneapolis, Minn. (D. J. Shama, of Minneapolis, Minn., on the brief), for appellant.

Benedict Deinard, of Minneapolis, Minn. (Oscar A. Brecke, of Minneapolis, Minn., on the brief), for appellee.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

The trustee for the bankrupt estate of the Calhoun Beach Club Holding Company recovered $31,001.89 in a suit upon a contractor's bond given the bankrupt prior to bankruptcy. Appellant filed a claim for $3,277.35, later amended to $5,-618.55. This claim was for services and for expenditures "in collecting facts, records, information and data, which he claims greatly assisted the trustee to make the aforesaid recovery in the bond

suit." Therefore, allowance of such claim was urged "as part of the expenses of the administration of this estate." This is an appeal from an order of the trial court affirming, on review, an order of the referee which "wholly disallowed" this claim.

The detailed statement of expenditures and of services attached to the claim, is divided into three stated and numbered periods of time. The first is July 18, 1932, to October 12, 1932; the second is October 13, 1932, to December 12, 1932; and the third is May 1, 1933, to April 13, 1934. The referee also divided the items of the claim into three time periods for consideration. This division by the referee was based upon differences in legal rules which he deemed applicable separately to each of the three periods. For convenience, we examine the claim under the three periods stated by the referee. Those periods are as follows:

"1. Items accrued before October 11, 1932, prior to the bankruptcy and prior to the date of the appointment of C. B. Cooper as Equity Receiver;

2. Items accrued during the Federal Equity Receivership Between October 11, 1932, and February 20, 1933, the date of the appointment of Paul E. Von Kuster as Receiver in bankruptcy;

3. Items accrued during the Bankruptcy and after February 20, 1933."

The referee made separate findings based upon each of these three periods. As to the first period, the referee sustained an objection to evidence "on the ground that any such disbursements made or services rendered can only constitute general claims against the bankrupt, and cannot be considered or allowed as expenses of administration." As to the second period, the referee found "that none of said alleged disbursements and services had any relation to the preparation or prosecution of said bond suit, or were of any assistance either to the Receiver in bankruptcy or to the Trustee, or to their counsel in the commencement, preparation, or prosecution of said suit, or were of any benefit or advantage to the above estate." As to the third period, the referee found: as to the claimed expenditures that "none of said disbursements were made pursuant to any employment or authorization to the claimant either from this Court, or from the Receiver in bankruptcy, or from the Trustee, or from their counsel, and did not enure to the benefit or advantage of the above estate." And, as to the claimed services, that "The only services rendered by the claimant during said period consisted of several conferences with counsel for the Trustee shortly before the trial of the bond suit, with respect to the testimony he might give upon the trial, and of actual attendance by him upon the trial; said services were rendered without any promise of compensation therefor, and were within the scope of the duties owed by petitioner, as managing officer of the bankrupt, to the Court, to cooperate and assist in the efficient and successful administration of said estate." [1]

---

[1] An outline of the situation is helpful in understanding the significance of this division into time periods and of the findings of the referee. The bankrupt was engaged in erection of a combined apartment and club building. The Joseph A. Holpuch Company was the general contractor and the Fidelity and Casualty Company of New York was the surety on this contractor's bond. About December 1, 1929, the contractor suspended work finally. At that time, the superstructure, walls and roof were in place but the interior unfinished. A number of mechanics' liens were filed and an action to foreclose thereon was filed in the State court on December 11, 1929. Foreclosure was decreed, and a sale had of the entire property on August 20, 1931. On the date (August 20, 1932) of expiration of the statutory period of redemption, this bankrupt and the Calhoun Beach Holding Company, filed suit, in the State court, to set aside the above decree and sale. This case was tried November 9, 1932, resulting in decree for defendants. There was an appeal by both plaintiffs.

While this suit was pending (October 11, 1932), a judgment creditor, who had been counsel for the bankrupt and had secured a consent judgment for fees, filed an action in the federal court for appointment of a receiver for this bankrupt; and, the bankrupt consenting, Mr. C. B. Cooper was that day appointed receiver. The referee found that this receivership action "was initiated and prosecuted by the bankrupt in the name of the nominal plaintiffs, and the judgment therein was entered with the collusion of, and at the instance of the bankrupt. On the same day, one C. B. Cooper was appointed receiver of the bankrupt corporation, with the consent of the bank-

## First Period.

 This period covers expenditures and services before appointment of Mr. Cooper as equity receiver. The referee excluded evidence as to such. Section 64 of the Bankruptcy Act, as amended, 11 U. S.C.A. § 104, sets out the debts which are to have priority over unsecured creditors in the order of payment. Item three (3) therein is as follows: "(3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary and involuntary cases, as the court may allow;". The term "The cost of administration" is not definite. However, the general rule of construction recognized is that such costs must be strictly construed (In re Rothman, 2 Cir., 85 F.2d 51, 106 A.L.R. 1408; In re Ketterer Mfg. Co., D.C.Pa., 156 F. 719) because the policy of the Act is to enjoin strict economy in the administration of estates.

Remington on Bankruptcy, 4th Ed., § 2632 and notes thereto. This means that a claim must clearly and convincingly come within the section to be entitled to priority. Counsel have cited us no case where expenditures made or services rendered while the bankrupt was in control of his property has been given priority. We have searched and not found such. The careful and detailed enumeration in section 64 suggests otherwise as does Randolph v. Scruggs, 190 U.S. 533, 539, 23 S.Ct. 710, 47 L.Ed. 1165. It is unnecessary for us to hold that such could never, under any circumstances, be the case. However, this record does not convince and we have been unable to imagine a set of circumstances where such could be true. The instances brought to our attention are those where certain expenditures during general assignment or during receivership proceedings, which preceded bankruptcy, have been allowed priority. Randolph v. Scruggs, 190 U.S. 533, 539, 23 S.Ct. 710, 47 L.Ed. 1165; In re Wishkah Logging Co., 9 Cir., 233 F. 259; In re Chase, 1 Cir., 124 F. 753. Such is not the situation as to the expenditures and services during this first period. There was no error in excluding this evidence.

---

rupt, the court being unaware of the pendency of the proceeding in the State Court. It appears that this appointment was for the express purpose of enabling Goldie to remain in charge of the assets and affairs of the bankrupt. C. B. Cooper was a personal friend of Goldie; he had no knowledge concerning the assets and affairs of the bankrupt. He was appointed by the Court upon the nomination of Goldie, and after his appointment he permitted Goldie to continue to manage the affairs of the bankrupt as he saw fit." Mr. Cooper was substituted for the bankrupt in the above suit to set aside the foreclosure judgment and sale.

Four days later (October 15), an involuntary petition was filed. The bankrupt answered, challenging jurisdiction, but this was later withdrawn and adjudication had on December 12, 1932. February 20, 1933, Paul E. Von Kuster was appointed receiver in the bankruptcy case. This appointment was necessary because a trustee had not been selected and the statutory limit for suit on the above contractor's bond was about to expire. Suit on the bond was filed by this receiver on the day of his appointment. Thereafter, a trustee was appointed (April 28, 1933) and he was substituted for the receiver in the bond suit.

Thereafter, the trustee was substituted for Mr. Cooper in the suit to set aside the foreclosure judgment and sale. As the bond suit approached trial, counsel for the trustee therein, after investigating the law, came to the conclusion that the then pendency on appeal of the suit to set aside might imperil recovery in the bond suit because the bond suit depended upon eviction of the bankrupt and because the suit to set aside was based on the contention that title in the bankrupt had not been lost since (it was urged) the foreclosure judgment and sale were invalid. In this situation, the trustee applied to the referee for instructions as to whether he should withdraw from the above appeal in the foreclosure suit. This matter was heard and resulted in an order (October 3, 1933) directing such withdrawal. Thereupon, the trustee dismissed the appeal on behalf of the bankrupt and the case proceeded on the appeal of the other appellant (Calhoun Beach Holding Company) with the result that the decree was affirmed. Calhoun Beach Holding Co. v. Minneapolis Builders' Supply Co. et al., 190 Minn. 576, 252 N.W. 442. Thereafter, judgment went in the bond suit for $31,001.89 which was paid to the trustee on August 16, 1935.

694

## Second Period.

■■ This period is during the equity receivership up to the appointment of the receiver in the bankruptcy proceeding. The referee found that the expenditures made and the services rendered during this period had no relation to the bond suit; were no assistance in that suit; and did not benefit the estate. This finding was adopted by the trial court. Careful reading of all evidence bearing on this period convinces that the finding was fully justified. Since benefit to the estate is the prime requisite to entitle such expenditure or service allowance to priority (Randolph v. Scruggs, 190 U.S. 533, 539, 23 S.Ct. 710, 47 L.Ed. 1165), what has just been stated disposes of this issue. However, appellant stresses two particular items which we now examine.

■ Appellant emphasizes the expenditure for legal services to Stiles and Stiles (after the substitution therein of Mr. Cooper, receiver in equity) in the suit to set aside the foreclosure suit and sale. Obviously, these services had no connection with the bond suit and, in fact, were opposed thereto and to the interests of the general creditors. See In re Zier & Co., 7 Cir., 142 F. 102. Another item is $25.00 paid as premium for the bond of Mr. Cooper as receiver. Ordinarily, there would be no question as to this item being entitled to priority. However, the trial court approved the finding of the referee that Mr. Cooper was appointed in a collusive suit, at the instance of Mr. Goldie, never sought to take possession of any property of the bankrupt, and permitted Mr. Goldie to continue (during the receivership) to manage the affairs of the bankrupt as he saw fit. In this situation, it cannot be said that this receivership was conceived or conducted for the benefit of the creditors. A basis of giving expenditures of an assignee or a receiver (before bankruptcy) priority of payment over unsecured creditors in a subsequent bankruptcy proceeding is that the assignment or receivership was in good faith to protect the interests of and to secure equal distribution to the creditors. To accomplish these results by such means it is a prime requisite that the property of the debtor should pass, actually and in good faith, from him into complete control of the assignee or receiver. If this control does not pass, the assignment or receivership is merely a sham—the most probable result of which is to shield the debtor from his creditors while interfering little with his control over his assets. Such a sham assignment or receivership is not in good faith but, whatever the motives of the debtor, is a fraud upon and a hindrance to his creditors. To permit expenditures or services by the debtor, in connection with such character of assignment or receivership, to be paid, in the bankruptcy proceeding, in preference to those creditors would clearly be inequitable. In fact, it would be inequitable to allow any payment thereof from the bankrupt estate. Summers v. Abbott, 8 Cir., 122 F. 36, 40.

■■ We cannot overthrow findings of fact by the referee, approved by the trial court, where (as here) there is substantial evidence in support thereof and they are not clearly erroneous, see Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c.

## Third Period.

This period has to do with expenditures and services after appointment of the receiver in the bankruptcy proceeding on February 20, 1933—the last item of expenditure being on December 26, 1933, and the end of services being April 13, 1934. As to expenditures, the referee found "none of said disbursements were made pursuant to any employment or authorization to the claimant either from this Court, or from the Receiver in bankruptcy, or from the Trustee, or from their counsel, and did not enure to the benefit or advantage of the above estate." As to services, the referee found "the only services rendered by the claimant during said period consisted of several conferences with counsel for the Trustee shortly before the trial of the bond suit, with respect to the testimony he might give upon the trial, and of actual attendance by him upon the trial; said services were rendered without any promise of compensation therefor, and were within the scope of the duties owed by petitioner, as managing officer of the bankrupt, to the Court, to cooperate and assist in the efficient and successful administration of said estate." As to both expenditures and services, the referee found, also, "that petitioner's present contention that his alleged disbursements and services were preparatory to the prosecution of the bond suit is an afterthought, and that no such intention was entertained by him at the time such

disbursements were made and such services rendered."

■ ■ The summary of the evidence, ascertained in the certificate of the referee, shows (with possible exceptions to be hereafter stated) direct conflict as to whether the expenditures were made and the services rendered at the request of the trustee or of his attorneys. There were no orders by the referee or by the court authorizing such. Eliminating the possible exceptions to be hereafter stated, there is ample evidence to sustain the findings of the referee (adopted by the court) when it is considered that the determination of conflicting evidence is for the referee and trial court and not within the province of this Court.

*The possible exceptions.* In the certificate of the referee, appear three matters of assistance from Mr. Goldie which were requested by counsel for the trustee in connection with the bond suit. One of these was a request that Mr. Goldie make a search for four architect's certificates which were missing—Mr. Goldie was unable to procure the certificates. A second was a "two page transcript of H. O. Stone Company's ledger account", furnished by Mr. Goldie. A third was several conferences with counsel for trustee "shortly before the trial of the bond suit for the purpose of discussing the testimony that said Goldie might give upon the trial"; and his actual attendance upon the trial.

■ The Bankruptcy Act recognizes the necessity of assistance from the bankrupt to the trustee and creditors in discovering and bringing into the estate all assets (11 U.S.C.A. §§ 25 and 44; Cameron v. United States, 231 U.S. 710, 717, 34 S.Ct. 244, 58 L.Ed. 448; Sparhawk v. Yerkes, 142 U.S. 1, 15, 12 S.Ct. 104, 35 L.Ed. 915) and such reasonable and ordinary services are due *without* compensation. Trustees v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157, and see Crutcher v. Logan, 5 Cir., 102 F.2d 612, 613; In re General Carpet Corporation, D.C.E.D.Pa., 38 F.Supp. 200, 203. It is only for extraordinary services—services in addition to and outside of those ordinarily necessary—that the bankrupt can secure compensation (In re Patterson-MacDonald Shipbuilding Co., 9 Cir., 288 F. 546), and then only when there is particular employment for such services. Crutcher v. Logan, 5 Cir., 102 F.2d 612, 613. Where the bankrupt is a corporation, this same situation applies to officers and directors

thereof. Crutcher v. Logan, 5 Cir., 102 F.2d 612, 613.

■ None of these services was at all extraordinary. They were simply the ordinary services necessary in the preparation for and the trial of a suit to recover assets for this bankrupt estate.

The order from which this appeal is taken must be and is affirmed.