In the Matter of AMERICAN ANTHRA-
CITE & BITUMINOUS COAL
CORP., Debtor.
No. 92887.

United States District Court
S. D. New York.
March 12, 1959.

See also 22 F.R.D. 504.

Cardillo & Smith, New York City, for petitioner Leonardo Arrivabene, S. A. Daniel L. Smith, Jr., Humphrey Statter, New York City, of counsel.

Chauncey H. Levy and Sydney Basil Levy, New York City, for debtor-respondent Sydney B. Levy, New York City, of counsel.

James J. Geraghty, Huntington, N. Y., for estate of Hector C. Dracoulis and Tramp Tankers Corp.

Booth, Lipton & Lipton, New York City, for creditors' committee.

DAWSON, District Judge.

This is a petition to review an order, dated January 12, 1959, by the Referee in Bankruptcy, which denied priority status to certain claims of creditors. This petition is filed on behalf of the following creditors:

1. Tramp Tankers Corporation of Liberia (Claim No. 32).

2. The late Hector C. Dracoulis (and the Dracoulis estate) (Claim No. 27).

3. Leonardo Arrivabene, S. A. (Claim No. 34).

The total amounts of their claims are not in controversy. The only question here is whether these claimants may assert a right to priority status.

An agreed statement of the facts necessary to a decision on the issues was placed on the record at a hearing held before the Referee in Bankruptcy on December 17, 1958. A brief summary of these facts follows:

The debtor, American Anthracite & Bituminous Coal Corp., was engaged in the business of exporting coal from the United States to various foreign countries. On October 21, 1957 the debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and on the following day, October 22nd, this court authorized the debtor to continue to operate its business.

Although the relevant facts for all three claims are similar, the claims of Tramp Tankers and Dracoulis are basically the same, and these will be treated first and the claim of Arrivabene will be treated separately.

### Claims of Tramp Tankers and Dracoulis

The debtor had entered into a charter party with claimant Tramp Tankers, dated May 10, 1956, covering approximately twelve trips of the vessel Archanax to last through January 31, 1959. Another charter party was en-

tered into with claimant Dracoulis, dated January 9, 1957, covering approximately twenty trips of the vessel Calliope to last through April 30, 1959.

These executory contracts were in operation at the time of the filing of the Chapter XI petition by the debtor. Both vessels had been tendered to debtor at United States loading ports shortly prior to the institution of the Chapter XI proceedings on October 21, 1957. However, the debtor was unable to provide cargoes for these ships and demurrage charges started to accrue.

The vessels remained at the loading ports until the middle of November, 1957, when, pursuant to stipulation (dated November 8 and approved by the court November 14, 1957) between claimants and debtor in possession, both vessels were released to make a charter party with third parties for a limited number of voyages, during which time it was agreed that the debtor would apply to the court for authority to assume or reject the executory contracts.

On January 2, 1958, upon debtor's petition dated November 29, 1957, an order was made authorizing debtor to reject both charter parties.

On or about January 20, 1958 claims were filed for damages for rejection of the contracts and seeking priority as to the following:

1. Tramp Tankers' Claim No. 32 for stevedore damages of $1,037.54, as per invoice dated June 27, 1957; demurrage of $4,403 accrued from October 15, 1957 to October 21, 1957 (pre-petition); and demurrage of $23,037, accrued from October 21, 1957 to November 16, 1957 (post-petition).

2. Dracoulis' Claim No. 27 for demurrage from October 23, 1957 to November 19, 1957 (post-petition). (Dracoulis also seeks to amend his claim to include pre-petition demurrage of $11,-000 earned from October 11, 1957 to the date of the petition.)

As previously indicated, there was no question as to the amount of the claims; the only question being whether the claimants are entitled to priority of payment.

By order dated September 10, 1958 this court confirmed a plan of arrangement under Chapter XI of the Bankruptcy Act in this proceeding. On September 22nd the debtor by notice of motion objected to the priority claims of the petitioners and scheduled a hearing thereon to be held October 16, 1958. By order dated January 12, 1959 the Referee disallowed priority claims No. 27, No. 32 and No. 34 of petitioners Dracoulis, Tramp Tankers and Arrivabene, respectively.

The petitioners argue that the Referee was in error in disallowing priority to the above-mentioned claims. This argument, urged in a very lengthy brief, may be summarized as follows:

1. The debtor has no standing to object to the priority of the claims.

2. The claims are entitled to priority under the Bankruptcy Act.

3. The debtor is liable under New York law.

4. The debtor is liable for rents earned within a three-month period prior to the filing of the petition.

I. *The Contention That the Debtor Has No Standing to Object*

The order of confirmation, dated September 10, 1958, directed that a hearing on any objections to claims "shall be brought on within 30 days from the date of entry of this order." Petitioners claim that since the hearing was held October 16, 1958, or at a time later than 30 days from the date of the order, the debtor was precluded from making any objections.

As pointed out by the Referee in his opinion dated December 19, 1958, the hearing was "brought on" by notice of motion dated September 22nd, well within the 30-day period allowed by the order of confirmation. While the hearing was actually held October 16th, it appears that this date was fixed by the Referee as the earliest date which was then open to him. Therefore there is no basis for

the petitioners' contention that the motion was not timely.

█ Petitioners also argue that the debtor is not a party in interest and has no standing to object to the priority status of shipowners' claims since the debtor had no legal interest in the fund in which the creditors would participate under the plan. Petitioners cite In re Woodmar Realty Co., 7 Cir., 1957, 241 F.2d 768 as a basis to show that debtor here is not a party in interest capable of objecting to a claim. However, that case is not authority for this contention. The court there stated:

"* * * The decisions have generally confined the bankrupt's and creditors' right to petition for reconsideration to situations in which the trustee clearly and unreasonably refused to act or *in which there was no trustee.* * * *" (Emphasis added). 241 F.2d 768, at page 771.

In the instant case there is no trustee and therefore the debtor is a proper party to make an objection to a claim.

█ While it may be a fact that the debtor will not participate in the fund which was deposited, General Order 21 (6), 11 U.S.C.A. following section 53, expressly authorized a "debtor" to apply to the Referee for reconsideration of any claim:

"Order 21. Proofs of Claim * *

"(6) When the trustee or any creditor or the bankrupt or debtor shall desire the reconsideration of any claim allowed against the estate, he may apply by petition to the referee to whom the case is referred for an order for such reconsideration * * *."

There is no basis, nor are any cases cited, in support of the contention that subsection (6) of General Order 21 relates only to contests with respect to the amount of a claim and not to contests over priority of claims. Therefore, by virtue of General Order 21(6), the debtor was a proper party in interest and could validly object to a claim of priority. See In re Povill, 2 Cir., 1939, 105 F.2d 157.

█ Petitioners also urge that the debtor is estopped by laches from objecting to these claims because the claims were filed January 20, 1958 and objections to those claims were not filed until after the confirmation date of September 10, 1958. However, this contention has no merit. These objections were raised within the 30-day period provided for by the confirmation of the arrangement. Furthermore, under § 369 of the Bankruptcy Act, 11 U.S.C.A. § 769, the court retains jurisdiction "until the final allowance or disallowance of all debts affected by the arrangement." On these grounds therefore the Referee properly denied the contentions of the petitioners and permitted the objections of the debtor to stand.

II. *The Contention That the Claims Are Entitled to Priority under the Bankruptcy Act*

█ Petitioners Dracoulis and Tramp Tankers contend that their claims have a right to priority by virtue of § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. It is to be noted that no priority statute exists under Chapter XI. However, § 302 of Chapter XI does incorporate into such proceedings the general bankruptcy sections "insofar as they are not inconsistent with or in conflict with the provisions" of Chapter XI. Therefore, the priorities enumerated in § 64 of the Act, 11 U.S.C.A. § 104, are applicable.

Section 64 of the Bankruptcy Act provides, in part, as follows:

"§ 64. *Debts which have priority.* (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be

"(1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * * the costs and expenses of administration * * *."

█ If these claims are to be awarded priority at all they must be shown to fall within one of the categories of § 64. Petitioners allege that these

claims are costs and expenses of administration, or actual and necessary costs of preserving the estate. However, the statutes involving priorities are strictly construed and the burden falls upon those asserting priority to establish that they come within the intended class. In re Paradise Catering Corp., D.C.S.D.N.Y. 1941, 36 F.Supp. 974. Under the provisions of the Bankruptcy Act giving costs of administration priority over unsecured creditors, the claims must clearly and convincingly come within this section. Goldie v. Cox, 8 Cir., 1942, 130 F.2d 690. Petitioners have not sustained this burden of proof. The contracts which form the bases of the claims were all entered into long before the Chapter XI petition was filed. The debtor-in-possession did not assume the charter parties either affirmatively or by any act from which assumption could be inferred. Petitioners urge that under § 357, sub. a of the Act, 11 U.S.C.A. § 757, sub. a, the arrangement of October 21, 1957 could have provided for the rejection of any executory contract and that it did not so provide. The inference urged by petitioners is that because the contracts were not rejected the claims under the contracts thereupon became expenses of administration. However, petitioners cite no authorities which are applicable in support of this contention, nor does this contention have any merit. Assumption or adoption of the contracts can only be effected through an express order of a judge. 6 Collier, Bankruptcy, at p. 691 (14th ed.). Petitioners are not entitled to priority in the absence of an order of the court authorizing such assumption. Matter of Avorn Dress Co., Inc., 2 Cir., 1935, 78 F.2d 681. In addition it was quite clear to all the parties that no assumption of the contract was intended since the stipulation under which the vessels were temporarily released expressly provided that it "shall not constitute any assumption of the charter parties." Under the circumstances, then, it cannot be said that the claims were costs or expenses of administration.

▮▮ Petitioners also allege that the claims arising from post-petition demurrage charges are actual and necessary costs or preserving the estate, in that the failure to reject the charter parties on October 21, 1957 constituted a "use" of the vessels thereafter. However, this contention has no substance.

▮▮ The debtor-in-possession has a reasonable time within which to decide whether adoption or rejection of an executory contract is the better course to recommend to the court. 6 Collier, Bankruptcy, at p. 689. Here, actual rejection was authorized by the court on January 2, 1958. However, by stipulation entered into by the parties on November 8, 1957, and approved by the court November 14, 1957, the vessels were released for a limited time, during which time actual rejection of the contracts was effected. If the petitioners desired to speed up the process of rejection they could have protected themselves by petitioning the judge for an order affirmatively assuming or rejecting the contract. 6 Collier, Bankruptcy, at p. 692; Matter of Greenpoint Metallic Bed Co., Inc., 2 Cir., 1935, 113 F.2d 881. It cannot be said then that the period from October 21, 1957, the date of the filing of the Chapter XI petition, to the date of the stipulation, was an unreasonable time.

All the authorities cited by petitioners deal with real property where the debtor actually used and occupied the premises for which rent was due. In 6 Collier, Bankruptcy, at p. 696, it is stated that where the executory contract is a lease of real property and the debtor is a lessee,

"* * * it is the settled rule that until assumption or rejection of the debtor's lease, the trustee of the debtor continued in possession is liable only for the reasonable value of the use and occupancy of the premises. Such value may be, but is not necessarily, fixed at the rent reserved in the lease. * * *"

This quotation relied on by petitioners expressly refers to real property. In the

instant case we have no executory contract with reference to real property, nor did debtor actually "use" or "occupy" the vessels at any time after the filing of the Chapter XI petition.

The theory behind all use and occupation cases is that the estate has benefited from the continued possession of the leased property and that this benefit must be paid for as compensation for the use and occupation in preserving the estate, but not as rent. 4 Collier, Bankruptcy, pp. 1243, 1244. Petitioners allege that the debtor was benefited in that the availability of the ships for use precipitated the debtor to enter into a favorable modification of certain contracts with third parties; that had the ships not been available these third parties would perhaps have terminated their contracts with the debtor or executed terms which would have been less favorable to the debtor, in view of the then deteriorating shipping conditions. Under this view the "benefit" consisted of the availability of the ships for "use." However, the Referee has found that there is no substance to petitioners' assertion that they benefited the estate in this way, and that there was no evidence to support this contention.

It should be noted that there was an agreed statement of facts dictated into the record on December 17, 1958 at the hearing before the Referee. Whether or not there was a benefit to debtor from the availability of the ships may be determined only from this statement and the motion papers. On the basis of this agreed statement of facts, together with the papers on this motion, this Court confirms the finding of the Referee that there was insufficient evidence to support petitioners' contention that the debtor was benefited by the presence of the vessels. Although the petitioners make the allegation of a "benefit" at length in their briefs, there is no evidence presented which could lead to the conclusion that the debtor derived a benefit from the availability of these vessels. Hence, there having been no benefit to the debtor that can be ascertained from the evidence, the contentions of the petitioners, that the "use" of the vessels was an actual and necessary cost of preserving the estate, must fall.

Therefore, there is no basis for awarding priority to these claims on the grounds that the claims are expenses of administration or costs or expenses of preserving the estate within the meaning of § 64 of the Bankruptcy Act.

III. *The Contention That the Debtor Is Liable under New York Law.*

Section 959 of Title 28 United States Code, provides in part as follows:

"(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury."

Under this section the petitioners contend that the debtor-in-possession was liable under New York law for the post-petition detention of petitioners' vessels. It should be noted that it is agreed that the debtor is liable for the post-petition detention. Also, as pointed out by the Referee, the debtor-in-possession would, of course, be liable for any contracts entered into by them while operating the business, and claims so arising would be entitled to priority. However, the debtor-in-possession did not enter into any contracts with petitioners, nor did they assume by any "act or transaction" the existing contracts.

While state statutes may confer a priority on certain claims, and these statutes may receive recognition (6 Collier, Bankruptcy, at p. 2851) petitioners here cite no state statute which would confer upon such claims a priority. The cases which petitioners cite are not bankruptcy cases and do not treat the problem of priority of claims in a Chapter XI

proceeding, but merely discuss the measure of damages for wrongful detention of property. Hence these cases are totally inapplicable. Here there is no question concerning the validity of these claims. The question relates only to the priority status of the claims and petitioners have not shown that these claims are entitled to any priority under New York State law.

IV. *The Contention That the Debtor Is Liable for Rents Earned within a Three-Month Period Prior to the Filing of the Petition.*

 Finally, petitioners Dracoulis and Tramp Tankers contend that they are entitled to a priority for their claims arising from the demurrage charges accruing within a three-month period prior to the filing of the Chapter XI petition pursuant to § 64, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 104.

"§ 64. *Debts which have priority.* (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be

\* \* \* \* \* \*

(5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

However, this section is not applicable since it deals with "rent owing to a landlord who is entitled to priority by applicable State law." As the Referee noted, New York does not confer any such priority. In addition, demurrage is not "rent"; it is an allowance or compensation for the delay or detention of a vessel. See Robinson on Admiralty, p. 644.

As an alternative ground for priority for their pre-petition demurrage, petitioners rely on the "six months rule" under the doctrine enunciated in Dudley v. Mealey, 2 Cir., 1945, 147 F.2d 268, 271. There, in a reorganization proceeding under Chapter X, claims for hotel goods or services furnished within a short period of the receivership were allowed as preferred claims. It should be noted, however, that in a Chapter X reorganization there are no priority provisions and under § 102 of the Bankruptcy Act, § 64 which enumerates priorities is made specifically inapplicable. On the other hand, in Chapter XI proceedings priorities are strictly determined by § 64. The grounds urged by petitioners for priority are not those listed in § 64. Therefore petitioners are not entitled to priority for their claims on these contentions and the Referee's conclusions are affirmed.

Claim of Leonardo Arrivabene, S.A.

 Petitioner Arrivabene's claims for asserting priority are grounded on a different factual basis as to which there is no dispute. The only dispute is as to the legal effect of the facts.

On June 9, 1956 the debtor entered into an agreement of charter party with petitioner Arrivabene wherein petitioner Arrivabene was to furnish a vessel to carry coal between certain loading ports in the United States and discharge ports in Europe for a period of time lasting until January 22, 1959. Under the terms of the charter party the petitioner was given a lien on the cargo for freight and demurrage.

The vessel Praglia was tendered for its fifth voyage under the charter on August 23, 1957. The debtor failed to load the vessel until October 1, 1957, thus causing demurrage of $22,198.75 to accrue. Thereafter the vessel sailed for a port in Yugoslavia. Actually the debtor previously had entered into a sub-charter of the vessel with Transmarine Agencies, Ltd. for a freight charge of $78,844.27. Under the charter with petitioner, however, the freight charge for this voyage amounted to $108,810.90. This freight

charge, plus demurrage, became payable, according to the charter agreement, within seven days after the surrender of the signed bill of lading, which date occurred on October 8, 1957.

The debtor failed to pay the freight and demurrage charges, which amounted to $131,009.65, on October 8, 1957, and petitioner thereafter advised the debtor that petitioner would exercise its lien on the cargo.

On October 31, 1957 a stipulation was entered into by the debtor and the petitioner and acquiesced in by the sub-charterer and approved by the court, providing that in lieu of the enforcement and exercise of its lien on the cargo, petitioner would accept from the sub-charterer the said sub-freight of $78,844.27, without prejudice to any claim for the unpaid balance. The stipulation expressly provided that it was not to be deemed an affirmance or disaffirmance of the charter.[1]

Subsequently the vessel discharged its cargo in Yugoslavia on November 11, 1957. As in the case of the other petitioners, the charter with Arrivabene was rejected by the debtor-in-possession by order dated January 2, 1958. Claim No. 34 has been filed for the demurrage of $22,198.75, plus the freight charge of $108,810.90, less the sub-freight of $78,844.27, or $52,105.38. This amount is not questioned; the only question is whether this sum should be given priority.

Petitioner alleges that the Referee erred in not granting priority to petitioner's claim. The payments, which form the substance of the claim, were due on October 8, 1957, which was prior to the date of the filing of the Chapter XI petition. Since these claims arose under the executory contract prior to the filing of the Chapter XI petition they can be only general claims, unless by some additional act of the debtor they are transformed into claims with preference. 28 U.S.C.A. § 959.

In essence, petitioner asserts that this right of priority arose by virtue of the written settlement which was entered into and approved by this court. Therefore, it is necessary to consider very carefully the significance of this settlement. After due consideration this Court is convinced that the Referee's conclusions are correct.

There is no question that the petitioner had a valid lien on the cargo when, according to the terms of the charter party, the debtor refused to make the required payments. However, this lien vanished

---

1. The most important parts of this agreement are as follows:

"It Is Hereby Stipulated And Agreed by and between the attorneys for Leonardo Arrivabene, S.A. (hereinafter called 'owner'), owner, and the attorneys for American Anthracite & Bituminous Coal Corp. (hereinafter called 'charterer'), debtor and debtor-in-possession, charterers of the Italian steamship S. S. 'Praglia' under Charter Party dated June 9, 1956, as follows:

"1. In lieu of the enforcement and exercise of its lien upon the cargo presently on board the S. S. 'Praglia,' owner shall accept from Transmarine Agencies Ltd. (hereinafter called 'Transmarine') the freight due by Transmarine to charterer at the rate of 57 shillings per ton of 2240 pounds, less address commission of 3¾%, said freight to be paid in transferrable sterling in an amount equal to United States $78,844.27.

"2. Owner agrees that it will not en-force or exercise any lien whatsoever upon said cargo, this agreement to become effective only upon payment of the freight as aforesaid. * * *

"5. This agreement is without prejudice to any claim which the owner may assert against charterer in respect to the differences between the amount of freight accepted in accordance with this agreement, and such amounts as owner may be entitled to receive pursuant to Charter Party dated June 9, 1956 including freight and demurrage.

"6. It is understood by and between the attorneys hereto that the entry into this stipulation shall be without prejudice, shall not constitute a waiver of the rights of the parties hereto, and shall not be deemed an affirmance or disaffirmance of the executory contract executed between the owner and the charterer.

"Dated: New York, N. Y.
"October 31, 1957."

when the petitioner parted with possession of the cargo. In re 4,885 Bags of Linseed (Sears) 1 Black 108, 17 L.Ed. 35; Robinson on Admiralty, p. 401. In place of the lien which petitioner gave up voluntarily there remained only the rights reserved by the written stipulation. A careful reading of this document, the pertinent parts of which have been set forth in the footnote above, shows that in return for giving up its lien petitioner received an immediate payment of $78,844.27 and the right to assert a general claim against the debtor-in-possession for the unpaid balance. There was no indication that anything more was reserved. This is indicated by the fact that the stipulation expressly provided that it was not to be deemed an affirmance or disaffirmance of the charter, thus allowing the debtor-in-possession to elect to disaffirm the charter, as it did indeed do, without suffering any of the consequences of affirmation.

In petitioner's brief much is made of the fact that the debtor-in-possession, in its petition to the court for the approval of the October 31, 1957 stipulation, stated that "unless said proposal is acted upon, *additional substantial claims* will come into existence. * * *" (Emphasis supplied.) The conclusion which the petitioner draws from this statement is that a "benefit" was conferred upon the debtor-in-possession in that "no additional substantial claims" against the estate came into existence. This argument is speculative; nor can it be said with certainty that any assets of the estate were preserved. Furthermore, the petitioner has taken the quoted statement out of context. The full paragraph clearly shows the intention of the debtor-in-possession and the reason for requesting approval of the stipulation by the court:

"5. Petitioner is of the opinion and belief that the entry of such stipulation and the approval of this Court is in the best interest of this estate. Unless said proposal is acted upon, additional substantial claims

will come into existence not presently in the contemplation of the Debtor. The proposal in essence provides for the payment of less than all of a valid subsisting lien, but with a waiver of the rights to enforce said lien, *leaving the owner in the status of a general creditor as to the difference between the proposed payment and the amount of said owner's total claims."* (Emphasis added.) Court Exhibit No. 2.

Thus it is clear that the understanding was that the petitioner was to be left in the status of a general creditor as to the unpaid balance of the claim.

In view of the foregoing, petitioner's contention that the claim is entitled to priority under § 64, sub. a(1) of the Bankruptcy Act, as an expense of preserving the estate, or as an expense of administration, is without merit. This Court cannot agree with petitioner that the stipulation and the order of the court constituted an agreement to extend credit to the debtor-in-possession. Quite the contrary, paragraph 5 of Court Exhibit No. 2, which is the petition to the court accompanying the stipulation, would lead the Court to believe that there would be remaining only a general claim against the estate.

Nor was the estate enriched as in Larsen v. New York Dock Co., 2 Cir., 1948, 166 F.2d 687 and New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955, cited by petitioner. In the instant case petitioner had valid claims and a right to assert a lien against the cargo. However, by virtue of the stipulation they agreed to settle the claim for an immediate payment, without prejudice to the assertion of a general claim against the estate for the unpaid balance.

The remaining contentions of petitioner Arrivabene have already been treated in the previous discussion of the claims of Tramp Tankers and Dracoulis.

Accordingly, for the reasons mentioned, the Referee's conclusions are affirmed. So ordered.