**In re NEWLAND et al.**

**Appeal of GULF OIL CORPORATION.**

**No. 7408.**

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1940.

A. E. Kountz, Kountz & Fry, and William A. Meyer, all of Pittsburgh, Pa., for appellant.

Frank W. Stonecipher and Stonecipher & Ralston, all of Pittsburgh, Pa., for appellee.

Before BIGGS, CLARK, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

This is the second case[1] in a week's sitting of the Court to involve the intricacy of a statutory treatment of tax incidence.[2] It will be unnecessary, therefore, to repeat here anything that was said there. In our judgment the increasing legislative enlistment of middlemen such as processors, distributors, etc., as intermediaries for the collection of taxes will bring a corresponding increase in similar litigation.

The appellant, a gasoline distributor, sold gasoline to the Incandescent Supply Company on credit. At that time the appellant paid the Commonwealth of Pennsylvania the sum of $22.51 which was assessed against it on the sale under the Liquid Fuels Tax Act of Pennsylvania of May 21, 1931, P.L.(Pa.) 149, as amended, 72 P. S. §§ 2611a to 2611x. The Incandescent Supply Company subsequently was adjudged bankrupt and the appellant claimed a priority for $22.50 on the ground that it was subrogated to the Commonwealth's rights by reason of its payment of this sum. The referee's order disallowing the priority was affirmed by the District Court. This recital makes it plain that the differences between the earlier case[3] and the case at bar are formal. The tax here is gasoline, not processing; the tax has not been illegally collected, the appellant who paid the tax is suing his consumer; and the bankruptcy of the latter makes the right,

[1] The first case is New Consumers Bread Company v. Commissioner of Internal Revenue, 3 Cir., 115 F.2d 162, filed Oct. 4, 1940.

[2] The situations introduced by this type of litigation are discussed in: Taxation—Sales Taxes—Vendor as Agent or Taxpayer, 87 University of Pennsylvania Law Review 242 (note); Sales—AAA—Tax Refunds—Rights of Purchaser Against Processor, 5 University of Chicago Law Review 152 (note); Priority of City's Claims for Sales, Taxes Collected by Bankrupt Vendor, 46 Yale Law Journal 164 (note); Taxation—Collection and Enforcement—Right of Retailer to Funds Collected from Consumers Under Illegal Sales Tax, 52 Harvard Law Review 330 (note); Retail Sales Tax—Sale of Materials to Shoe Repairer as Wholesale Sale, 49 Harvard Law Review 662 (note); Creditors' Rights—Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104—City's Right to Preference for Money Owed Under City Sales Tax by Insolvent Vendor, 36 Columbia Law Review 1356 (note); Johnson, AAA Refunds; A Study in Tax Incidence, 37 Columbia Law Review 910.

[3] New Consumers Bread Company v. Commissioner of Internal Revenue, 3 Cir., 115 F.2d 162, filed Oct. 4, 1940, above cited.

if any, by way of subrogation rather than direct. In essence, however, the problem of the two cases is the same. How much has the legislative body adhered to mechanics and how little to equity? Has it been more interested in collection and less in burden?

The writings of the tax theorists indicate a steady abandonment of taxation according to benefit.[4] Whether that tendency has been wise or not is beyond our scope. Here, as elsewhere, the selfish forces on each side avoid the golden mean. The revenue for roads affords an illustration of the full turn of the wheel. The toll road and the toll gate figure in much of our literature, legal and otherwise.[5] As a child, the writer remembers many such around his Mother's home in Harrisburg in this State. The pendulum swung to the public road system and the right of everyone to ride at the expense of the community.[6] In the last twenty years it has swung partly back again and we have the Holland Tunnel, the Camden Bridge, the new Pennsylvania Highway, and the gasoline tax.[7] We say partly because our Federal system and the temptation movement toward diversion preclude any scientific evaluation of road use and the payment therefor.[8]

The mechanics of tax collection become complicated in proportion to the number and triviality of transactions. Incidence goes according to economic theory; impact is a matter of legislative selection. Where the theory prescribes many and little, the lawmaker shifts to fewer and larger. We find one of the draftsmen of the first (Oregon) gasoline tax saying: " 'After he had prepared the bill and submitted it to the committee, and then to the House, it was thought that the method of collection of the tax would be too expensive. I then prepared a bill changing the plan of collection from the local gas seller to the source of distribution, viz., the wholesaler of gas. As I remember it, at that time there were but four wholesale distributing plants. This bill became the law.' " Crawford, Motor Fuel Taxation in the United States (1939) p. 2.

That pattern has been generally followed and is followed in our statute. In fact our statute is significant in that it marks a change of policy. The original act adopted the administratively difficult theory of attempting to have impact and incidence coincide and "taxed" the consumer.[9] Furthermore, the present Act even softened the customary gesture towards equity and substituted a mild "and shall be borne by the consumer" for the original provision.[10]

We think that this statute points even more plainly than the refund provision of the. Agricultural Adjustment Act. The person in the tax relation to the state is identified in meticulous detail. The principal section of the statute reads: "Distributors shall be liable to the Commonwealth for the collection and payment of the tax imposed by this act. The tax imposed by this act shall be collected by the distributor at the time the liquid fuels are used or sold and delivered by the distributor and shall be borne by the consumer". 72 P.S. § 2611d, par. 3.

In its supplementary sections, the law advises the distributors that (1) they must obtain a permit and furnish a bond, 72 P.S. § 2611c; (2) they must pay the tax and report such payment, 72 P.S. § 2611f; (3) they must keep records and have them available for examination, 72 P.S. §§ 2611h, 2611i; (4) they and they alone are entitled to refunds, 72 P.S. § 2611q. That relationship is not altered by any attempt to shift according to the true incidence or by any legislative expression of what that true incidence is. In the analogous statute of the State of New York, the language shifting

---

[4] Seligman, Essays in Taxation, 9th Ed., pp. 71, 337; Lutz, Public Finance, 3rd Ed., p. 352, et seq.

[5] Bouvier's definition is: "a road or highway over which the public has the right to travel upon payment of toll, and on which the parties entitled to such toll have the right to erect gates and bars to insure its payment". 2 Bouv. Law Dict., Rawle's Third Revision, p. 3341.
Cf. 13 Encyl. of the Social Sciences, Roads, pp. 404, 405, et seq.; 29 American and English Encyl. of Law, 2d Ed., Turnpikes and Toll Roads, p. 2.

[6] Thompson, Highways, p. 427.

[7] Municipal Engineering, Vol. 54, No. 6; Report of National Tax Association, September 1924, on Problems of Highway Travel; and as to the benefit of gasoline taxes, Green, The Theory and Practice of Modern Taxation, 2d Ed., pp. 186-9; Twentieth Century Fund, Inc., Facing the Tax Problem, pp. 255-270.

[8] Crawford, Motor Fuel Taxation in the United States (1939) chapter 7, Diversion.

[9] Act of 1929 P.L. (Pa.) 1037, Secs. 4, 9, 12, 13, 72 P.S. §§ 2541, 2563-2565.

[10] 72 P.S. § 2611d.

the incidence is more vigorous,[11] and yet even here the Court of Appeals for the Second Circuit denies priority and so subrogation.[12]

There being no primary obligation, we are not concerned with the rather confused state of this phase of the law of subrogation.[13]

The decree of the District Court is affirmed.

---

[11] The language is: "The intention of this article is to place the ultimate burden resulting from such tax, so far as possible, on persons who use the public highways of the state for operating motor vehicles thereon". Consol.Laws N.Y. c. 60, Article 12-A, sec. 289-c.

[12] In re Conklin, 110 F.2d 178.

[13] Mistake — Subrogation — Quasi Contracts—Recovery for Taxes Paid on Land of Another, 21 Minnesota Law Review 218 (note); Subrogation: Right of Subordinate Mortgagee Who Has Paid City Taxes and Water Rents to be Subrogated to the Rights of the City in Priority to the Lien of the First Mortgage, 19 Cornell Law Quarterly Review 487 (note); Subrogation—Right of Surface Owner Who Pays Taxes Assessed Against Coal Land to be Subrogated to Tax Lien, 15 Virginia Law Review 495 (note); Subrogation—Right of Drawer of Certified Check to Subrogation to Statutory Preference of Government as Payee, 45 Harvard Law Review 389 (note); Subrogation—Right of Second Mortgage to Assert City's Lien after Paying Taxes to Prevent Foreclosure of First Mortgage, 46 Harvard Law Review 1036 (note).