**McCARROLL, Com'r of Revenues of Arkansas, v. JEAN.**

**In re R. W. MAYS CO.**

**No. 11860.**

Circuit Court of Appeals, Eighth Circuit.
April 14, 1941.

Frank Pace, Jr., Lester M. Ponder, and Henry Gregory, Jr., all of Little Rock, Ark., for appellant.

Lee Cazort, Jr., of Little Rock, Ark., for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by the Commissioner of Revenues for the State of Arkansas from a decision of the Bankruptcy Court which sustained the decision of the Referee in Bankruptcy holding that the State of Arkansas was not entitled to a preferred claim against the assets of the R. W. Mays Company, bankrupt, for taxes legally due and owing by said bankrupt. The facts are substantially as follows:

The R. W. Mays Company is a corporation organized under the laws of the State of Arkansas and prior to its bankruptcy was doing business as a wholesale grocery company at Fordyce, Arkansas. As a part of its wholesale business it sold cigarettes to retail dealers. There was a state tax on the sale of cigarettes in Arkansas, and when the R. W. Mays Company went into bankruptcy in January, 1939, the state filed a preferred claim for $754.45 for cigarette stamp taxes alleged to be due and owing by the bankrupt. On September 4, 1937, pursuant to administrative regulations, the R. W. Mays Company filed with the Department of Revenues an application for the appointment of Harry W. Mays, its secretary-treasurer, as stamp deputy of the Ar-

kansas State Revenue Department for the R. W. Mays Company, and thereupon Harry W. Mays was so appointed. Cigarette tax stamps were issued to Harry W. Mays during the tenure of his appointment as stamp deputy, part of which were paid for, leaving a balance of $754.45, for which no payment has ever been made. Stamps in this sum were turned over to the R. W. Mays Company by Harry W. Mays. The tax stamps so issued were affixed to packages of cigarettes by the R. W. Mays Company and sold to various retail dealers. Harry W. Mays, secretary-treasurer of the R. W. Mays Company, acted as bookkeeper for the bankrupt but kept no separate accounts or books of the transactions involving cigarette stamps issued to him. While a commission of 7 per cent is allowed stamp deputies as compensation for handling cigarette stamps, it was never paid to Harry W. Mays, but was absorbed by the R. W. Mays Company in its cigarette stamp account with the Department of Revenues. All cigarette stamps were issued to Harry W. Mays in care of the R. W. Mays Company and payment for all stamps was made by the bankrupt, except those in the sum of $754.45, such payment being made by checks drawn by the R. W. Mays Company, and Harry W. Mays at no time paid for any of the stamps himself. On several occasions a portion of the cigarette tax stamps were consigned to Harry W. Mays, stamp deputy, without requiring him to remit for stamps previously consigned on the date as provided by administrative regulations.

On this appeal it is urged that the court erred in not holding that the claim filed against the bankrupt was for taxes legally due and owing the State of Arkansas by the bankrupt and as such entitled to allowance as a preferred claim. Appellant relies upon Section 64, sub. a(4), of the Chandler Act, 11 U.S.C.A. § 104, sub. a(4), which so far as here pertinent reads as follows: "a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankruptcy estates, and the order of payment, shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof * * *."

The lower court in affirming the order of the referee took the view that the claim was not one for taxes due from the bank-

rupt, but that the consumer was the taxpayer, and not the bankrupt.

The first legislative act of the State of Arkansas creating a cigarette stamp tax was Act 152, passed in the year 1929. This levied a tax upon the sale of cigarettes and provided that it should be collected by the sale of stamps to a retailer who was required to affix the stamps to the packages before they were sold to the consumer. There was no provision in the Act of 1929 permitting sale of stamps to wholesalers. In 1937, the legislature of the State of Arkansas passed Act 336 for the purpose of making collections of the tax on cigarettes more effective and to eliminate alleged tax evasions by retailers under the original act. Section 1 of this act reads as follows: "The business of handling, receiving, storing, distributing, taking orders for, soliciting for orders of, selling, offering for sale and dealing in, through sale, barter or exchange, tobacco products, as defined in Section 2 of this Act, is hereby declared to be a privilege under the constitution and laws of the State of Arkansas, and the purpose of this Act is to impose certain licenses, fees and to curb the evasion of excise taxes heretofore imposed, and for other purposes."

Section 5 reads in part as follows:

"Any distributor of tobacco products licensed by this state may sell cigars and cigarettes under the following restrictions and in conformity with the following requirements:

"(a) They shall, before selling, delivering or otherwise disposing of cigars and cigarettes to retailers, in the state of Arkansas, affix stamps of the proper denomination to show that the tax has been paid. The stamp shall be affixed in such manner as the Commissioner may by regulation prescribe."

Pursuant to the authority contained in this statute, the Commissioner promulgated certain regulations, which, among other things, provide as follows: "If a distributor or wholesaler desires to handle tobacco products, taxable by use of tax stamps, he shall qualify as a distributor and make application to the Commissioner for the appointment of himself, or the secretary, or other official, if the distributor is a corporation, as a stamp deputy. In the application he shall assume all responsibility for the acts of the stamp deputy appointed in the handling of the stamps, and all the tax liability in the handling of the taxable tobacco products."

The R. W. Mays Company applied for appointment of a stamp deputy and apparently operated its business under the provisions of the 1937 Act.

Section 6, paragraph (a), of the 1937 Act places certain restrictions upon the handling of tobacco products by retailers, and provides that: "When the retailer purchases or otherwise becomes the owner or possessor of tobacco products, he shall, at the time he purchases such products and before he receives or takes the same into his possession, require that properly cancelled stamps be affixed to show that the tax thereon has been paid."

It is observed that the distributor, here the bankrupt, before selling or otherwise disposing of his tobacco products to retailers, is required to "affix stamps of the proper denomination to show that the tax has been paid." He is not only required to affix the stamps but he is required to cancel them before disposing of the products to retailers, and the statute requires that he invoice the tobacco products to the retailer in such a manner as to show that the tax has been paid. When the retailer purchases tobacco products, it is made his duty, before he takes them into his possession, to "require that properly cancelled stamps be affixed to show that the tax thereon has been paid." We are of the view that this statute levies a tax due and owing by the distributor and not a tax due and owing by the retailer or consumer. The act contains no provision for sales of cigarette stamps to retailers; neither does it contain any provision for the ultimate payment of the tax by the consumer. So far as the statute is concerned, the distributor might or he might not pass the tax on to the retailer or ultimate consumer. A somewhat similar situation was considered by the Second Circuit in Re Riemer, 82 F.2d 162, 164. That case involved a motor vehicle tax imposed by the State of New York to be paid by the distributor. The distributor went into bankruptcy and the State of New York insisted that its tax claim be allowed as a preferred claim. In the course of that opinion the court, among other things, said: "Clearly the sale by the distributor is what is taxed and when he sells he becomes liable to the state for the tax whether he sells on credit or for cash. It is to him

alone that the state looks for payment and against him alone proceedings to recover the tax are to be taken under section 289 if he fails to pay within the time limited. Thus the law which imposes the tax upon sales of motor fuel by a distributor makes the distributor the taxpayer though he is not only permitted but presumed to shift the burden to the consumer."

See, also: City of New York v. Goldstein, 299 U.S. 522, 57 S.Ct. 321, 81 L.Ed. 384; In re Jayrose Millinery Co., Inc., 2 Cir., 93 F.2d 471; In re Atlas Television Co., Inc., 273 N.Y. 51, 6 N.E.2d 94.

It is, however, contended by appellee that these decisions are not controlling because the Chandler Act limited the right of priority of claims that had been permissible under the previous Bankruptcy Act. It is pointed out that the old law gave priority to debts owing to any person who by the laws of the states or the United States is entitled to priority, etc., whereas the Chandler Act gives priority only to "debts owing to any person, including the United States, who by the laws of the United States [is] entitled to priority," etc. However that may be, a claim for taxes legally due and owing by the bankrupt to the United States, or any state or subdivision thereof, was given priority by the old law, just as it is given priority under the Chandler Act. The decisions referred to and attempted to be distinguished are not bottomed upon the fact that the claim was allowable as a debt, but that it was allowable as a tax. The distributor under the Arkansas law was the taxpayer and the claim was therefore for taxes legally due and owing by the bankrupt.

The judgment appealed from is therefore reversed and the cause remanded for further proceedings consistent herewith.