5Q5



# THE ATTORNEY GENERAL

## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

**AUSTIN, TEXAS**

January 28, 1950

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-992.

Re: Whether the Comptroller
may authorize a distributor
to make tax-free sales of
motor fuels purchased for
the purpose of processing
or compounding with other
products to make paints,
stains, acids, powdered in-
secticides and other prod-
ucts which are not motor
fuel.

Dear Mr. Calvert:

Your letter requesting our opinion relative to the above
captioned matter reads in part as follows:

"We desire the opinion of your office as to the
proper construction to be placed on Section 5(a), of the
motor fuel tax law - Art. 7065b, V. A. C. S., which, as
far as it is applicable to the question here, reads as fol-
lows:

" 'The Comptroller may authorize and per-
mit . . . any licensed distributor of motor
fuel in this State to make a sale, resale,
or distribution of . . . motor fuel, without
collecting the tax levied herein, to any dis-
tributor holding a valid permit, etc., . . .
when the product is sold and purchased for
the purpose of exportation, further refining,
further processing, further treating, blend-
ing or compounding with other products to
produce motor fuel, or for resale for some
one or more of such purposes, and not other-
wise.'

"We have requests from motor fuel distributors
for authority to make tax-free sales to other distribu-
tors of toluol, xylol and cyclo-hexane - unfinished ma-
terials which come within the statutory definition of

motor fuel - when the products are purchased for the purpose of (1) compounding them with lacquer and related products to produce paints and stains, and (2) compounding them with other chemicals and materials to produce acetic acid (for making nylon) and to produce powdered insecticides, etc., none of such finished products being motor fuel.

"   . . .

"It is therefore respectfully requested that you advise this department whether or not the Comptroller may legally authorize a distributor to make tax-free sales of motor fuels to another licensed distributor under the terms of the said Section 5(a), when the motor fuels are purchased for the purpose of compounding or blending them with other products to produce paints, stains, acids and other similar by-products which in their finished forms are not motor fuel."

Said Section 5(a) of Article 7065b, V.C.S., reads as follows:

"The Comptroller may authorize and permit any person producing natural gasoline, casing-head gasoline, drip gasoline, or any derivative or condensate of crude oil or natural gas, in their natural and unrefined state, or any person operating a pipe line as a common carrier, or any licensed distributor of motor fuel in this State to make a sale, resale, or distribution of such products or of motor fuel, without collecting the tax levied herein, to any distributor holding a valid permit under the terms of this Article, when such distributor purchasing the same has, in the opinion of the Comptroller, a satisfactory and sufficient bond, and when the product is sold and purchased for the purpose of exportation, further refining, further processing, further treating, blending or compounding with other products to produce motor fuel, or for resale for some one or more of such purposes, and not otherwise. If the distributor purchasing said products without paying said tax shall thereafter sell, or distribute said products, either alone or when compounded with other products, in this State, for any purpose other than that hereinabove provided, he shall be required to collect and pay over to the State of Texas at the time and in the manner herein provided, the tax at the rate of four (4) cents per gallon upon each gallon or fractional part thereof sold or distributed. Said distributor shall also be liable for and shall be required to pay to

the State of Texas said tax at the aforesaid rate upon
each gallon of such motor fuel used by said distributor.
Failure or refusal to collect and pay over to the State
of Texas the tax on motor fuel so sold or distributed
by said distributor, or to pay the tax on motor fuel used
by said distributor, shall subject him to all the liabili-
ties, penalties, forfeitures, interest and costs provided
in this Article."

Subsection (b) of said Section 5 reads:

"Provided further, that any person whether pro-
ducer, pipe-line operator or licensed distributor, who
shall make any sale or distribution as provided herein,
shall be required to make and keep all the records and
manifests involving such sales or distributions as is
required of a distributor in Section 9(b) of this Article.
Said person shall also be required to make and file with
the Comptroller the return or report required by Sec-
tion 3 of this Article, showing all the information con-
tained therein. The manifest required to be issued up-
on such sale or distribution shall bear the notation that
said product is being sold or distributed for further re-
fining, further processing, treating, blending, compound-
ing, or for exportation, whichever the case may be.
Provided further, that every producer and every pipe-
line operator shall qualify as a distributor and obtain a
distributor's permit before selling the commodities
named herein to any person other than a licensed and
qualified distributor. All such sales and distributions
shall be made in accordance with rules and regulations
promulgated by the Comptroller."

We have given careful consideration to the entire mo-
tor fuel tax statute, but we shall refer only to such of its provisions
as are deemed material in the consideration of the question involved
herein. A reading of the entire motor fuel tax law reflects that the
incidence of the tax is not the "sale" or "distribution" of motor fuel,
but the "use" of motor fuel in the propelling of motor vehicles upon
the public highways of this State. It is true that the law levies and
imposes a tax of four cents per gallon upon the first sale, distribu-
tion or use of motor fuel. However, in all cases where the ultimate
use of the motor fuel is for purposes other than the propelling of
motor vehicles upon the public highways of this State, by complying
with the "refund" provisions of the act, the user of the motor fuel
is refunded the tax paid. In this connection we call your attention
to that part of Section 2(a) of Article 7065b, V.C.S., which reads:

" . . . In each subsequent sale or distribution of
motor fuel upon which the tax of four (4) cents per gallon

has been collected, the said tax shall be added to the
selling price, so that such tax is paid ultimately by the
person using or consuming said motor fuel for the pur-
pose of generating power for the propulsion of any mo-
tor vehicle upon the public highways of this State."

The provisions relative to the tax being paid by the first seller or
distributor of the motor fuel were enacted for administrative and
enforcement purposes, and to remove as far as possible the oppor-
tunity for tax evasion. The seller of motor fuel is a mere collect-
ing agency for the State. Texas Co. v. Miller, 165 F.2d 111 (C.C.A.
5th 1947).

By providing for tax-free sales of motor fuel in certain
instances, the Legislature evidenced its intention of not making an
"idle expenditure of public funds" by collecting a tax on the first
sale or distribution of motor fuel and then refunding the same, in
those instances where the motor fuel was to be so handled that it
would not be used to generate power to propel motor vehicles upon
the public highways of this State. This is evidenced by making tax-
free sales of motor fuel which is sold for the purpose of exportation,
and by the provision for making tax-free sales where the motor fuel
is purchased for the purpose of either further refining or further
processing. You will note that as to both "further refining" and "fur-
ther processing" of the motor fuel, the statute does not provide that
the further refining or further processing in order to be tax-free
shall produce motor fuels. It is clear that the underscored portion
of Section 5(a) of Article 7065b provides that the Comptroller may
authorize tax-free sales when the motor fuel is purchased for the
following purposes: (1) exportation or (2) further refining or (3) fur-
ther processing or (4) further treating, blending or compounding with
other products to produce motor fuel or (5) for resale for some one
or more of such purposes. The evident purpose of the provision rel-
ative to making tax-free sales of motor fuel for the purpose of fur-
ther treating, blending or compounding with other products to pro-
duce motor fuel, was that although the finished or ultimate product
to be obtained would be motor fuel, the further treating, blending or
compounding with other products would either increase or diminish
the taxable quantity of the motor fuel. The Legislature only intend-
ed to ultimately tax the actual volume used in the propelling of mo-
tor vehicles upon the highways. Without this provision a hiatus would
result in that after the treating, blending or compounding, a tax would
have been paid on a gallonage either greater or less than the amount
to be used on the highways in propelling motor vehicles.

The meaning of the words "process" and "processing"
is very broad and comprehensive. Webster's New International Dic-
tionary, Second Edition, states: " 'Process' denotes a progressive
action or a series of acts or steps, esp. in the regular course of

performing, producing, or making something." "The word 'process' is a mode of treatment of certain materials to produce a given result." France Co. v. Evatt, 143 Ohio St. 455, 55 N.E.2d 652; Ralston Purina Co. v. Zoning Board of Town of Westerly, 64 R.I. 197, 12 A.2d 219. "Processing" is a flexible term and may refer to either chemical or physical change in the thing acted upon." Gulf Oil Corp. v. City of Philadelphia, 357 Pa. 101, 53 A.2d 250 (1947). The court in Auricchio v. United States, D.C.N.Y., 49 F. Supp. 184, held that the mixing of sunflower oil with coloring material and flavoring matter in the production of an article intended for sale was a "processing."

Of course, a distributor can only be authorized to make a tax-free purchase of motor fuel when such distributor has, in your opinion, a satisfactory and sufficient bond. Art. 7065b, sec. 5(a), V.C.S. This bond is to protect the State in the event of a diversion of the motor fuel by the purchaser to a taxable use.

You are therefore advised that it is our opinion that the Comptroller may legally authorize a distributor to make tax-free sales of motor fuels to another licensed distributor, who has a satisfactory and sufficient bond, when the motor fuels are purchased for the purpose of further processing, although the finished product will not be a "motor fuel."

### SUMMARY

The Comptroller of Public Accounts may authorize and permit a licensed distributor of motor fuel in this State to make a sale, resale, or distribution of motor fuel, without collecting the tax levied by Section 2 of Article 7065b, V.C.S., when the product is sold and purchased for the purpose of further processing to produce paints, stains, acids, powdered insecticides and other non-motor fuel products provided the distributor purchasing the same has, in the opinion of the Comptroller, a satisfactory and sufficient bond. Art. 7065b-5, V.C.S.; Texas Co. v. Miller, 165 F.2d 111 (C.C.A.5th 1947).

Yours very truly,

PRICE DANIEL
Attorney General

By ⟨signature⟩
Assistant

APPROVED:

Charles D. Mathews
Executive Assistant

WVG/mwb